UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| TED CHARLES JACKSON,<br><br>        Plaintiff,<br><br>    v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>        Defendant. | Case No. 1:21-cv-00270-SAB<br><br>ORDER DENYING PLAINTIFF'S SOCIAL SECURITY APPEAL<br><br>(ECF Nos. 22, 23) |
|---|---|

**I.**

**INTRODUCTION**

Ted Charles Jackson ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for disability benefits pursuant to the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Stanley A. Boone.[1]  Plaintiff submits: (1) the ALJ erred in ruling that Plaintiff's condition does not satisfy the requirements of listing 12.10; and (2) the ALJ's residual functional capacity finding is unsupported because the ALJ failed to properly weigh the opinion of Dr. Musacco, and improperly disregarded substantial evidence.  For the reasons set forth below, Plaintiff's Social Security appeal shall be denied.

---

[1] The parties have consented to the jurisdiction of the United States Magistrate Judge.  (See ECF Nos. 8, 11, 12.)

## II.

## BACKGROUND

### A. Procedural History

On January 5, 2017, Plaintiff applied for Title XVI Supplemental Security Income benefits. (AR 46-58.) This initial claim was denied on June 1, 2017. Plaintiff subsequently filed a new claim for Title XVI Supplemental Security benefits on December 4, 2017, alleging disability beginning December 30, 1996. (AR 186-192.) Plaintiff's application was initially denied on February 26, 2018, and denied upon reconsideration on June 22, 2018. (AR 91, 98.) Plaintiff requested and received a hearing before Administrative Law Judge William Musseman (the "ALJ"). At the hearing level, Plaintiff moved for reopening the prior application pursuant to HALLEX I-2-9-30. (AR 843.) Plaintiff appeared for the hearing on October 2, 2020, with the assistance of counsel. (AR 31-45.) On October 19, 2020, the ALJ issued a decision finding that Plaintiff was not disabled. (AR 12-30.) The Appeals Council denied Plaintiff's request for review on January 14, 2021. (AR 1-6.)

On February 25, 2021, Plaintiff filed this action for judicial review. (ECF No. 1.) On August 27, 2021, Defendant filed the administrative record ("AR") in this action. (ECF No. 13.) On March 3, 2022, Plaintiff filed an opening brief. (Pl.'s Opening Br. ("Br."), ECF No. 22.) On April 4, 2022, Defendant filed an opposition brief. (Def.'s Opp'n ("Opp'n"), ECF No. 23.) Plaintiff did not file a reply brief.

### B. The ALJ's Findings of Fact and Conclusions of Law

The ALJ made the following findings of fact and conclusions of law as of the date of the decision, May 27, 2020:

- The claimant has not engaged in substantial gainful activity since November 27, 2017, the application date.
- The claimant has the following severe impairments: obesity; autism; Asperger's syndrome; anxiety; personality disorder; and attention deficit hyperactivity disorder (ADHD).
- The claimant does not have an impairment or combination of impairments that meets or

1 medically equals the severity of one of the listed impairments in 20 CFR Part 404,
2 Subpart P, Appendix 1.
- Claimant has the residual functional capacity to perform medium work as defined in 20 C.F.R. 416.967(c) except the claimant can occasionally deal with the general public and coworkers. The claimant can perform rote, repetitive tasks of SVP2 or less.
- The claimant has no past relevant work.
- The claimant was born on December 30, 1996 and was 20 years old, which is defined as a younger individual age 18-49, on the date the application was filed.
- The claimant has at least a high school education.
- Transferability of job skills is not an issue because the claimant does not have past relevant work.
- Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.
- The claimant has not been under a disability, as defined in the Social Security Act, since November 27, 2017, the date the application was filed.
- 
- Plaintiff has not been under a disability, as defined in the Social Security Act, since March 28, 2018, the date the application was filed.

(AR 17-24.)

## III.

## LEGAL STANDARD

To qualify for disability insurance benefits under the Social Security Act, the claimant must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Regulations set out a five step sequential evaluation process to be used in determining if a claimant is disabled. 20 C.F.R. §

3

404.1520;[2] Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1194 (9th Cir. 2004). The five steps in the sequential evaluation in assessing whether the claimant is disabled are:

> Step one: Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.
>
> Step two: Is the claimant's alleged impairment sufficiently severe to limit his or her ability to work? If so, proceed to step three. If not, the claimant is not disabled.
>
> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1? If so, the claimant is disabled. If not, proceed to step four.
>
> Step four: Does the claimant possess the residual functional capacity ("RFC") to perform his or her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow him or her to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Commissioner, Social Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).

Congress has provided that an individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits. 42 U.S.C. § 405(g). In reviewing findings of fact in respect to the denial of benefits, this court "reviews the Commissioner's final decision for substantial evidence, and the Commissioner's decision will be disturbed only if it is not supported by substantial evidence or is based on legal error." Hill v. Astrue, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means more than a scintilla, but less than a preponderance. Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (internal quotations and citations omitted). "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." Thomas v. Barnhart, 278 F.3d 947, 955 (9th Cir. 2002) (quoting Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)).

---

[2] The cases generally cited herein reference the regulations which apply to disability insurance benefits, 20 C.F.R. §404.1501 et seq., however Plaintiff is also seeking supplemental security income, 20 C.F.R. § 416.901 et seq. The regulations are generally the same for both types of benefits.

"[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." Hill, 698 F.3d at 1159 (quoting Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006).  However, it is not this Court's function to second guess the ALJ's conclusions and substitute the court's judgment for the ALJ's.  See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").

## IV.

## DISCUSSION AND ANALYSIS

Plaintiff argues the ALJ erred in: (1) the ALJ erred in ruling that Plaintiff's condition does not satisfy the requirements of listing 12.10; and (2) the ALJ's residual functional capacity finding is unsupported because the ALJ failed to properly weigh the opinion of Dr. Musacco, and improperly disregarded substantial evidence.

**A.     The Court Finds No Harmful Error At Step Three**

Plaintiff submits that the ALJ's finding that the severity of Plaintiff's mental impairments did not meet or equal the requirements of any listing is not supported by substantial evidence. (Br. 10-13.)

1.     General Legal Standards

At step three in the sequential process, the ALJ is to determine if the claimant has an impairment that meets or equals one of a list of specific impairments described in the regulations. 20 C.F.R. § 404.1520(d); Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999); Burch, 400 F.3d at 679.  "The Secretary does not consider a claimant's impairment to be one listed in Appendix I solely because it has the diagnosis of a listed impairment." Marcia v. Sullivan, 900 F.2d 172, 175 (9th Cir. 1990) (quoting 20 C.F.R. § 404.1525(d)).  The ALJ is required to review the symptoms and make specific findings essential to the conclusion. Gonzalez v. Sullivan, 914 F.2d 1197, 1200 (9th Cir. 1990).  "An examiner's findings should be as comprehensive and analytical as feasible and, where appropriate, should include a statement of subordinate factual foundations on which the ultimate factual conclusions are based, so that a reviewing court may

know the basis for the decision." Id.  However, the ALJ need not state why a claimant failed to satisfy every different section of the listings. Id. at 1201.  The ALJ's evaluation of the evidence can be "an adequate statement of the 'foundations on which the ultimate factual conclusions are based.' " Id.

"An ALJ must evaluate the relevant evidence before concluding that a claimant's impairments do not meet or equal a listed impairment.  A boilerplate finding is insufficient to support a conclusion that a claimant's impairment does not do so." Lewis v. Apfel, 236 F.3d 503, 512 (9th Cir. 2001).  However, the ALJ need not discuss the findings in any specific section of his opinion. Lewis, 236 F.3d at 513.[3]

To meet a listing, an impairment "must also have the findings shown in the Listing of that impairment." Marcia, 900 F.2d at 175.  "To meet a listed impairment, a claimant must establish that he or she meets each characteristic of a listed impairment relevant to his or her claim.  To equal a listed impairment, a claimant must establish symptoms, signs and laboratory findings 'at least equal in severity and duration' to the characteristics of a relevant listed impairment, or, if a claimant's impairment is not listed, then to the listed impairment 'most like' the claimant's impairment." Tackett, 180 F.3d at 1099 (quoting 20 C.F.R. § 404.1526).  The Ninth Circuit has also held that "[a]n ALJ is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence." Kennedy v. Colvin, 738 F.3d 1172, 1178 (9th Cir. 2013) (quoting Burch, 400 F.3d at 683).  Equivalence may be determined if the claimant has multiple impairments none of which meets the listing requirement, but which when viewed in the aggregate are equivalent to a listed impairment. Burch, 400 F.3d at 682.  In determining if a claimant's combination of impairment equals a listing the ALJ must consider his

---

[3] In Marcia, the plaintiff argued that the ALJ's finding at step three was insufficient to show that the ALJ actually considered whether the medical evidence equaled a listed impairment. 900 F.2d at 176.  The ALJ's finding as to medical equivalence was that "[t]he claimant has failed to provide evidence of medically determinable impairments that meet or equal the Listings to Subpart P of Regulation 4 or the duration requirements of the Act . . . ." Marcia, 900 F.2d at 176.  The Ninth Circuit found that this was insufficient and held that "the ALJ must explain adequately his evaluation of alternative tests and the combined effects of the impairments." Id.  Subsequently, in Lewis, 236 F.3d at 513, the Ninth Circuit held that an ALJ's discussion and evaluation of the evidence to support his conclusion was sufficient even if not discussed under the relevant section of the ALJ's report.

symptoms in combination and cannot fragment them in evaluating their effects. <u>Lewis</u>, 236 F.3d at 513.

      2.     <u>The ALJ's Step Three Findings and Conclusions</u>

The ALJ made the following findings and conclusions at step three of the sequential analysis, finding Plaintiff did not meet or equal the relevant mental listings:

> The severity of the claimant's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.04, 12.06, 12.08, 12.10 and 12.15. In making this finding, the undersigned has considered whether the "paragraph B" criteria are satisfied. To satisfy the "paragraph B" criteria, the mental impairments must result in one extreme limitation or two marked limitations in a broad area of functioning. An extreme limitation is the inability to function independently, appropriately, or effectively, and on a sustained basis. A marked limitation is a seriously limited ability to function independently, appropriately, or effectively, and on a sustained basis.
>
> In understanding, remembering or applying information, the claimant has a mild limitation. The claimant alleges some difficulty with following directions (5E). However, the claimant was able to recall 3/3 objects immediately and after a delay during his testing (4F and 7F). Also, the claimant had an IQ over 110 as evidence by two separate tests (4F and 7F). His ability to play video games is also evidence of his ability to remember control schemes and rules of play (5E). Therefore, he has a mild limitation.
>
> In interacting with others, the claimant has a moderate limitation. The claimant does allege social difficulty and his family reported he has difficulty getting along with others (5E and 8F). However, the claimant was calm and cooperative during his examinations (4F and 7F). The claimant also reported enjoying talking and texting with his friends (5E). The claimant also reported being able to attend junior college without social anxiety (4F). Therefore, the claimant has moderate limitations.
>
> With regard to concentrating, persisting or maintaining pace, the claimant has a moderate limitation. The claimant had some difficulty with carrying out serial 3s and also complained of difficulty with carrying out directions (5E and 4F). However, the claimant was able to spell WORLD forwards and backwards on both examinations (4F and 7F). The claimant also was able to carry out serial 7s during his later examination (7F). He also reported playing video games, demonstrating an ability to concentrate and persist (5E). Therefore, he has a moderate limitation.
>
> As for adapting or managing oneself, the claimant has experienced a moderate limitation. The claimant alleges difficulty handling stress and also demonstrated limited insight into his condition (5E and 8F). However, the claimant also routinely denied suicidal

ideation and had no psychological hospitalizations in the record (8F). The claimant also reported being able to groom himself, dress himself, cook simple meals, drive, and attend junior college (4F). He also was able to answer abstract questioning during his examinations, demonstrating some intact judgment (4F and 7F). Therefore, he has a moderate limitation.

Because the claimant's mental impairments do not cause at least two "marked" limitations or one "extreme" limitation, the "paragraph B" criteria are not satisfied.

The undersigned has also considered whether the "paragraph C" criteria are satisfied. In this case, the evidence fails to establish the presence of the "paragraph C" criteria. To demonstrate this, your mental disorder in this listing category is "serious and persistent;" that is, you have a medically documented history of the existence of the disorder over a period of at least 2 years, and there is evidence of both: medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of your mental disorder (see 12.00G2b); and marginal adjustment, that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life (see 12.00G2c). The claimant fails to meet these criteria because the claimant has not demonstrated a minimal capacity to adapt to changes in their environment nor attended therapy for two years. For instance, the claimant also routinely denied suicidal ideation and had no psychological hospitalizations in the record (8F). The claimant also reported being able to groom himself, dress himself, cook simple meals, drive, and attend junior college (4F). He also was able to answer abstract questioning during his examinations, demonstrating some intact judgment (4F and 7F). Therefore, the claimant does not meet the "paragraph C" criteria.

The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment of the areas of mental functioning. The following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the "paragraph B" mental function analysis.

(AR 17-19.)

3. <u>The Court Finds no Error in the ALJ's Step Three Listing Determination</u>

Plaintiff most pointedly argues the ALJ erred in finding Plaintiff did not meet Listing 12.10.

Listing 12.10, pertaining to Autism spectrum disorder, requires satisfaction of both the Paragraph A and Paragraph B criteria. 20 C.F.R. § Pt. 404, Subpt. P, App. 1; <u>Aldridge v. Colvin</u>,

No. CV-14-00755-PHX-SPL, 2015 WL 13603772, at *8 (D. Ariz. Aug. 4, 2015), aff'd sub nom. Aldridge v. Berryhill, 693 F. App'x 657 (9th Cir. 2017).  Paragraph A requires medical documentation of both: (1) "Qualitative deficits in verbal communication, nonverbal communication, and social interaction"; and (2) "Significantly restricted, repetitive patterns of behavior, interests, or activities."  20 C.F.R. § Pt. 404, Subpt. P, App. 1.  The Paragraph B criteria requires an extreme limitation in one, or a marked limitation of two, of the following areas of mental functioning: (1) "Understand, remember, or apply information"; (2) "Interact with others"; (3) "Concentrate, persist, or maintain pace"; and (4) "Adapt or manage oneself."  Id.

The Court finds no identified error in the ALJ's analysis that would require or justify remand here.  The ALJ properly evaluated the four functional domains, found mild or moderate limitations in each of them, and the analysis is supported by substantial evidence in the record, that was expressly cited by the ALJ.  The conclusion is consistent with findings of State Agency reviewing physicians Dr. Buerger and Dr. Gross, who found Plaintiff only had mild to moderate limitations in these four areas.  (AR 18, 66-67, 79-81.)  The ALJ expressly found these opinions persuasive.  (AR 20.)  Plaintiff does not specifically mount a challenge to the weight afforded to the agency physician opinions.

Plaintiff mounts general arguments against the decision, such as that it ignored substantial evidence that supported Plaintiff's claim, and that the ALJ's discussion of the medical evidence was at best cursory.  (Br. 10-11.)  The Court disagrees, and finds ample substantial evidence in support of the ALJ's opinion, and the Plaintiff fails to identify specific evidence ignored that would demonstrate harmful legal error.  (See Br. 11.)

Plaintiff takes issue with the fact the ALJ proceeded directly into the Paragraph B criteria, without addressing whether Plaintiff met the Paragraph A criteria.  (Br. 11-12.) However, the Plaintiff must satisfy both the Paragraph A and Paragraph B criteria, and Plaintiff cites no legal authority that this is error, where there is no error in the finding that the Paragraph B criteria was not met.  See 20 C.F.R. § Pt. 404, Subpt. P, App. 1; Sullivan v. Zebley, 493 U.S. 521, 530 (1990) ("For a claimant to show that his impairment matches a listing, it must meet all

of the specified medical criteria").

Plaintiff argues the ALJ failed to appropriately consider the objective test results of Dr. Musacco, or more drastically, "ignored in their entirety, the findings of Musacco." (Br. 12.) The Court finds this inaccurate and finds no legal error. While the ALJ did not expressly reference the results in the step three finding, the ALJ did consider the examination in the opinion, and in relation to a similar exam that was conducted thereafter in 2017, later in the opinion:

> The claimant underwent a psychological examination in July 2016, where he alleged he enjoys playing video games and isolates at home. He stated that he is currently not taking any medications. He reported that he showers every day, can complete some laundry, and cook. He stated that he has a difficulty adapting to frustrations in everyday life. He stated that he does not like most people, but does spend time talking with his friends. It was noted that he graduated from high school and that he has Asperger's syndrome and autism. It was also noted that he bites the back of his hands when he is nervous or frustrated. His testing revealed an IQ of 112, despite his symptoms (2F). He then underwent another examination in 2017, where he alleged autism and attention deficit hyperactivity disorder (ADHD). He stated that he can dress and bathe himself. He stated that he can drive and that he can complete computer work. At this time, he was also attending junior college. He was cooperative with the exam. He was properly oriented and he had intact memory. He could recall 3/3 items immediately and remotely, he was able to recall personal data. The claimant was able to name three Presidents of the United States. The claimant stated there are 12 eggs in a dozen and we put food in the refrigerator "so it keeps well." The claimant was able to state 7 x 3 = 21. The claimant reported there are nine quarters in $2.25. The claimant stated he would have 40 cents if he had a quarter, a dime, and a nickel. The claimant he was unable to complete serial 3s. The claimant was able to spell WORLD forward and WORLD backward. He was able to perform a simple three-step command. He was able to attend to the conversation and respond appropriately. When asked the meaning of "You can't judge a book by its cover", the claimant reported, "You shouldn't judge people based on their appearances." When asked the similarities between an apple and orange, the claimant reported, "They both grown on trees." When asked the differences, the claimant reported, "One is a citrus."
>
> When asked what he would do if he found a stamped addressed envelope on the street, the claimant reported, "Put it in the mailbox." When asked if he usually makes good or bad decisions, the claimant reported "bad decisions." When asked if he was satisfied with the decisions he made, he reported "no idea." When asked what he needs to get better, the claimant reported, "It's too general. I don't know the answer." When asked which three words best describe him, he reported "tall, lazy, and a little overweight." Overall, he appeared cognitively intact (4F). Afterwards, Jeanne

> Card, Psy.D. opined the claimant has moderate limitations in interacting with others and a mild impairment with following complex instructions (4F/5). The undersigned finds this partially persuasive. The opinion the claimant has a moderate social limitation is consistent with the claimant's complaints of isolating himself and having difficulty with interacting with others (4F). However, some ability to interact with others is supported by the claimant's clam and cooperative demeanor (4F). The mild limitation regarding following complex instructions is supported by the claimant's intact memory 3/3 on all items (4F). However, the claimant's mistakes with serial 3s does not support only a mild limitation, however, so the undersigned limited the claimant to simple instructions (4F). Therefore, the opinion is partially persuasive.

(AR 20-21.)

Dr. Musacco's testing results included the Vineland Adaptive Behavioral Scales Second Edition (VABS-II) testing. In addition to express consideration of the July 2016 examination in relation to other evidence in the record (AR 20-21), Dr. Buerger considered and cited these results as part of her review and translated these findings and other evidence into concrete restrictions. (AR 64-67.) The Court finds no error, and again, Plaintiff does not challenge the weight afforded to the state agency physician opinions. See Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1174 (9th Cir. 2008) ("The ALJ translated Stubbs–Danielson's condition, including the pace and mental limitations, into the only concrete restrictions available to him—Dr. Eather's recommended restriction to 'simple tasks.' This does not, as Stubbs–Danielson contends, constitute a rejection of Dr. McCollum's opinion."). The Court finds the state agency physician opinions to constitute substantial evidence, and were appropriately weighed and considered by the ALJ in relation to providing support for the Step Three finding, and the ultimate RFC determination:

> As for medical opinion(s) and prior administrative medical finding(s), the undersigned cannot defer or give any specific evidentiary weight, including controlling weight, to any prior administrative medical finding(s) or medical opinion(s), including those from medical sources. The undersigned has fully considered the medical opinions and prior administrative medical findings as follows: Jane Beurger, Ph.D., a state agency consultant, examined the claimant's records and opined she is able to perform simple tasks with reduced social interaction (2A/10). Daniel Gross, Psy.D., a state agency consultant, affirmed this opinion (4A/12). The undersigned finds these persuasive. First, the ability to

> perform simple work tasks is supported by the claimant's IQ scores being over 110 (4F and 7F). It is also supported by the claimant's intact memory during both of his tests as well as his ability to perform serial 7s (4F and 7F). This is also consistent with the claimant's ability to drive, cook, and carry out most of his activities of daily living independently (4F and 5E). The ability to have some reduced social interactions is also supported by the claimant's calm, cooperative demeanor during his exam (4F). Furthermore, though non-treating and non-examining, the assessment is based on a review of the available medical record and a comprehensive understanding of agency rules and regulations.
>
> The opinions are also well supported by a thorough discussion of the evidence. Therefore, they are persuasive.

(AR 22.)

Further, as repeated below, the Court finds the ALJ was further not required to assign a weight to the objective examination findings and diagnosis from July 2016. See Cuyson v. Berryhill, No. 2:16-CV-01913 AC, 2017 WL 3913874, at *4–5 (E.D. Cal. Sept. 7, 2017) (internal citations and quotation marks omitted) ("The ALJ did not implicitly reject the opinion of Dr. Soliven because Dr. Soliven did not provide a medical opinion.  Medical opinions are statements from physicians and other acceptable medical sources that reflect, among other things, judgments about what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions . . . The ALJ properly addressed Dr. Soliven's notes. The ALJ expressly considered the mental disorder questionnaire and letter that Dr. Soliven submitted, and because those documents were not medical source statements or opinions concerning Plaintiff's residual functional capacity he was not required to formally weigh them."), aff'd sub nom. Cuyson v. Saul, 795 F. App'x 535 (9th Cir. 2020); Wolcott v. Colvin, No. 2:15-CV-1796-CKD, 2016 WL 3549603, at *3 (E.D. Cal. June 30, 2016) ("[T]he ALJ was not required to consider and weigh the GAF score assessed by Dr. Nguyen as if it were that physician's opinion regarding the claimant's work-related functional limitations.").

Plaintiff does accurately note that the ALJ incorrectly stated Dr. Martinez only found a mild impairment in concentration (AR 21), and did not recognize the record contained a finding of a marked impairment to relate and interact with co-workers and public (AR 973).  (Br. 12-13.) Plaintiff argues this is itself grounds for remand, and that the testing of Dr. Musacco, which also

12

1 revealed significant social deficits, collectively are dispositive of this matter.  (Id. at 13.)

2 The Court agrees it is concerning the ALJ misstated this fact, however, the Court 3 ultimately finds any error to be harmless, and the findings and determinations to be supported by 4 substantial evidence.  Listing 12.10 requires a marked limitation in two of the four functional 5 areas, and thus even if the ALJ adopted the marked limitation on social interaction, Plaintiff 6 would not have met the requirements of the Listing.  Defendant contends interacting with 7 coworkers and the public is only a subset of the category of interacting with others.  The Court 8 finds this argument not totally convincing as coworkers and public are a large and important 9 subset of others.  The Court finds more significant Defendant's argument that the ALJ accepted 10 the RFC findings of the state agency physicians Dr. Buerger and Dr. Gross, who reviewed and 11 translated Dr. Martinez' opinion into a concrete translation.  See Stubbs-Danielson, 539 F.3d at 12 1174.

13 As for whether this constituted error to the RFC analysis, Plaintiff does not sufficiently 14 argue or demonstrate harmful error in that regard either.  See Shinseki v. Sanders, 556 U.S. 396, 15 409, 129 S. Ct. 1696, 1706, 173 L. Ed. 2d 532 (2009) ("Consequently, the burden of showing 16 that an error is harmful normally falls upon the party attacking the agency's determination.").

17 The Court finds that substantial evidence supports the ALJ's findings and conclusions at 18 step three; and that the ALJ properly evaluated the relevant evidence, before concluding the 19 impairments did not meet or equal the listing.  Lewis, 236 F.3d at 512.   As discussed above and 20 below, the Court found the ALJ's reliance on the medical opinions and evidence as a whole to be 21 proper and supported by substantial evidence.  Plaintiff has the burden at step three, and Plaintiff 22 has not demonstrated the ALJ's analysis contained harmful legal error.  Based on the Court's 23 review of the totality of the medical records and opinions, and the ALJ's thorough review, 24 analysis, and discussion of such evidence, the Court only finds Plaintiff requests the Court to 25 apply a different interpretation of the evidence.  Morgan, 169 F.3d at 603; Burch, 400 F.3d at 26 679 ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's 27 conclusion that must be upheld.").

28 Plaintiff has submitted no reply to Defendant's arguments made in opposition briefing.

1 The Court finds Plaintiff has not demonstrated legal error that warrants remand for
2 reconsideration by the agency. See Kennedy v. Colvin, 738 F.3d 1172, 1176 (9th Cir. 2013)
3 (internal citations and quotation marks omitted) ("Listed impairments are purposefully set at a
4 high level of severity because the listings were designed to operate as a presumption of disability
5 that makes further inquiry unnecessary [and] when a claimant meets or equals a listing, he is
6 presumed unable to work and is awarded benefits without a determination whether he actually
7 can perform his own prior work or other work . . . [l]isted impairments set such strict standards
8 because they automatically end the five-step inquiry, before residual functional capacity is even
9 considered."); Griffin v. Saul, No. 19-CV-07045-RS, 2021 WL 4992626, at *4 (N.D. Cal. Feb. 8,
10 2021) (There is, therefore, substantial support for the finding that Griffin suffered only moderate,
11 not marked, limitations in the four relevant areas . . . would be improper to second-guess the
12 ALJ's resolution of this inconsistency in light of the deferential standard of review [and claimant]
13 has not, therefore, shown she is entitled to relief at step three.").

Accordingly, the Court finds no error by the ALJ at step three in determining that Plaintiff did not meet or equal any relevant listing, and specifically as to Plaintiff's challenge as to listing 12.10.

**B.    The ALJ'S RFC Analysis is Proper and Supported by Substantial Evidence and the Court find No Harmful Error in the Weighing of the Medical Opinions**

Plaintiff argues the ALJ's residual functional capacity ("RFC") finding is unsupported by substantial evidence because the ALJ failed to properly weigh the opinion of Dr. Musacco and disregarded substantial evidence. (Br. 13.) Plaintiff does not present the standards for weighing medical opinions, or whether the 2017 amended regulations are applicable.

1.    Legal Standards

**a.    Residual Functional Capacity**

A claimant's RFC is "the most [the claimant] can still do despite [his] limitations." 20 C.F.R. § 416.945(a)(1). The RFC is "based on all the relevant evidence in [the] case record." 20 C.F.R. § 416.945(a)(1). "The ALJ must consider a claimant's physical and mental abilities, § 416.920(b) and (c), as well as the total limiting effects caused by medically determinable

14

impairments and the claimant's subjective experiences of pain, § 416.920(e)." Garrison v. Colvin, 759 F.3d 995, 1011 (9th Cir. 2014). At step four the RFC is used to determine if a claimant can do past relevant work and at step five to determine if a claimant can adjust to other work. Garrison, 759 F.3d at 1011. "In order for the testimony of a VE to be considered reliable, the hypothetical posed must include 'all of the claimant's functional limitations, both physical and mental' supported by the record." Thomas, 278 F.3d at 956.

When applying for disability benefits, the claimant has the duty to prove that she is disabled. 42 U.S.C. § 423(c)(5)(A). The ALJ has an independent "duty to fully and fairly develop the record and to assure that the claimant's interests are considered." Widmark v. Barnhart, 454 F.3d 1063, 1068 (9th Cir. 2006) (quoting Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983)). The ALJ has a duty to further develop the record where the evidence is ambiguous or the ALJ finds that the record is inadequate to allow for proper evaluation of the evidence. Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001); Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001). A specific finding of ambiguity or inadequacy in the record is not required to trigger the necessity to further develop the record where the record itself establishes the ambiguity or inadequacy. McLeod v. Astrue, 640 F.3d 881, 885 (9th Cir. 2011).

### b.     The 2017 Regulatory Framework for Weighing Medical Opinions

The Social Security Administration revised its regulations regarding the consideration of medical evidence — applying those revisions to all claims filed after March 27, 2017. See Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 FR 5844-01, 2017 WL 168819, *5844 (Jan. 18, 2017). Plaintiff filed his claim on December 4, 2017 (AR 186-92); therefore, the revised regulations apply. See 20 C.F.R. § 404.1520c.

Under the updated regulations, the agency "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's own] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a).[4] Thus, the new regulations require an ALJ to apply the same factors

---

[4] The regulations at 20 C.F.R. § 404.1501 et seq., reference the regulations which apply to disability insurance benefits, and the regulations at 20 C.F.R. § 416.901 et seq. apply to supplemental security income, though the

to all medical sources when considering medical opinions, and no longer mandate particularized procedures that the ALJ must follow in considering opinions from treating sources. See 20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c).

"When a medical source provides one or more medical opinions or prior administrative medical findings, [the ALJ] will consider those medical opinions or prior administrative medical findings from that medical source together using" the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors that "tend to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. §§ 404.1520c(a)-(c)(1)-(5), 416.920c(a)-(c)(1)-(5). The most important factors to be applied in evaluating the persuasiveness of medical opinions and prior administrative medical findings are supportability and consistency. 20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c). Regarding the supportability factor, the regulation provides that the "more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). Regarding the consistency factor, the "more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

Accordingly, the ALJ must explain in the decision how persuasive they find a medical opinion and/or a prior administrative medical finding based on these two factors. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). Additionally, the ALJ "may, but [is] not required to, explain how [they] considered the [other remaining factors]," except when deciding among differing yet equally persuasive opinions or findings on the same issue. 20 C.F.R. §§ 404.1520c(b)(2)-(3), 416.920c(b)(2)-(3). Further, the ALJ is "not required to articulate how [he] considered evidence from nonmedical sources." 20 C.F.R. § 404.1520c(d).

---

regulations are generally the same for both types of benefits.

The "treating source rule" allowed an ALJ to reject a treating or examining physician's uncontradicted medical opinion only for "clear and convincing reasons," and allowed a contradicted opinion to be rejected only for "specific and legitimate reasons" supported by substantial evidence in the record. See, e.g., Trevizo v. Berryhill, 871 F.3d 664, 675 (9th Cir. 2017). The revised regulations no longer use the term "treating source," but instead use the phrase "your medical source(s)" to refer to whichever medical sources a claimant chooses to use. See 20 C.F.R. §§ 404.1520c, 416.920c; 82 FR 5844-01, 2017 WL 168819, at *5852–53 (eliminating "treating source rule"). In sum, the requirement that an ALJ provide "clear and convincing" or "specific and legitimate" reasons for discounting a treating or examining opinion no longer applies, as this "measure of deference to a treating physician is no longer applicable under the 2017 revised regulations." Jean T. v. Saul, No. 20CV1090-RBB, 2021 WL 2156179, at *5 (S.D. Cal. May 27, 2021); see also, e.g., Jones v. Saul, No. 2:19-CV-01273 AC, 2021 WL 620475, at *7-10 (E.D. Cal. Feb. 17, 2021) (finding the new regulations valid and entitled to Chevron deference, and because prior case law "is inconsistent with the new regulation, the court concludes that the 2017 regulations effectively displace or override" it); Meza v. Kijakazi, No. 1:20-CV-01216-GSA, 2021 WL 6000026, at *6 (E.D. Cal. Dec. 20, 2021) ("courts in this circuit have rejected the notion that the treating physician rule still pertains to claims filed after March 27, 2017").

Nonetheless, the new regulations still require the ALJ to explain his reasoning and to specifically address how he considered the supportability and consistency of the opinion. 20 C.F.R. §§ 404.1520c, 416.920c; see P.H. v. Saul, No. 19-cv-04800-VKD, 2021 WL 965330, at *3 (N.D. Cal. Mar. 15, 2021) ("Although the regulations eliminate the 'physician hierarchy,' deference to specific medical opinions, and assigning 'weight' to a medical opinion, the ALJ must still 'articulate how [he] considered the medical opinions' and 'how persuasive [he] find[s] all of the medical opinions.") (citation omitted). As always, the ALJ's reasoning must be free of legal error and supported by substantial evidence. Indeed, the Court notes that, for example, where an ALJ's rationale for rejecting a contradicted treating physician's opinion satisfies the new regulatory standard, it would almost certainly pass scrutiny under the old standard as well.

See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (noting that inconsistency with independent clinical findings in the record is a specific and legitimate reason to reject a contradicted opinion of a treating physician). Thus, even under the new regulatory framework, the Court still must determine whether the ALJ adequately explained how he considered the supportability and consistency factors relative to medical opinions and whether the reasons were free from legal error and supported by substantial evidence. See Martinez V. v. Saul, No. CV 20-5675-KS, 2021 WL 1947238, at *3 (C.D. Cal. May 14, 2021).

### 2. The Court finds the ALJ did not Err in the RFC Determination or in Weighing the Medical Opinions and Evidence as a Whole

Plaintiff's primary argument is that the ALJ failed to properly weigh the opinion of Dr. Musacco. As discussed above, the Court finds the ALJ properly weighed the objective exam results from Dr. Musacco, and Dr. Buerger considered and cited these results as part of her review and translated these findings and other evidence into concrete restrictions (AR 64-67), and again, Plaintiff does not challenge the weight afforded to the state agency physician opinions. See Stubbs-Danielson, 539 F.3d at 1174. Further, as stated above, the Court finds the ALJ was further not required to assign a weight to the objective examination findings and diagnosis from July 2016. See Cuyson v. Berryhill, 2017 WL 3913874, at *4–5; Wolcott v. Colvin, 2016 WL 3549603, at *3; see also Mekyhna C. v. Saul, No. 2:19-CV-228-FVS, 2020 WL 4741090, at *6 (E.D. Wash. Aug. 14, 2020) ("Mr. Korsgaard's treatment notes are not medical opinions as defined in 20 C.F.R. §§ 404.1527(a)(1), 416.927(a)(1). Therefore, the ALJ was not required to weigh them or provide reasons for not adopting his opinions."); c.f. Fortunel v. Comm'r of Soc. Sec., No. 2:15-CV-1198-KJN, 2016 WL 3880718, at *4 (E.D. Cal. July 18, 2016) (where doctor "opined on a function-by-function basis that the limitations associated with her left shoulder impairment would be permanent . . . the ALJ was required to provide a statement as to what, if any, weight he assigned Dr. Hu's opinions as to plaintiff's specific functional limitations along with proper reasons supporting that assigned weight.").

As noted above, Plaintiff is correct that the ALJ incorrectly stated Dr. Martinez only found a mild impairment in concentration (AR 21), and did not recognize the record contains a

finding of a marked impairment to relate and interact with co-workers and public (AR 973). (Br. 12-13.) Again, the ALJ accepted the RFC findings of the state agency physicians Dr. Buerger and Dr. Gross, who reviewed and translated Dr. Martinez' opinion into a concrete translation. See Stubbs-Danielson, 539 F.3d at 1174. As for whether this constituted error to the RFC analysis, Plaintiff does not sufficiently argue or demonstrate harmful error. See Shinseki, 556 U.S. at 409. Significantly, as Defendant highlights, Dr. Buerger and Dr. Gross were aware of this opinion, found it *consistent* with the record, and translated it into a succinct residual functional capacity, including only occasional interaction with coworkers and the public, which the ALJ adopted. (AR 19, 68-69, 82, 84.) Plaintiff mounts no response to this argument in reply for the Court to consider, and again, it is Plaintiff's burden to show harmful error.

The Court concludes the findings and opinions were adequately supported by the longitudinal record, and properly weighed by the ALJ. See 20 C.F.R. § 416.920c(c)(1) ("The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be."); 20 C.F.R. § 416.920c(c)(2) ("The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be."); Chaudhry v. Astrue, 688 F.3d 661, 671 (9th Cir. 2012) (ALJ properly relied more on non-examining physician's opinion than examining physician's opinions to assess the claimant's RFC); Thomas, 278 F.3d at 957 ("The opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record.").

Accordingly, the Court finds no harmful or remandable error in the ALJ's RFC determination, or in the weighing of the physician opinions. See Rounds v. Comm'r of Soc. Sec., 807 F.3d 996, 1006 (9th Cir. 2015) ("[T]he ALJ is responsible for translating and incorporating clinical findings into a succinct RFC."). While Plaintiff argues the ALJ ignored critical evidence, the Court finds that contention not supported by the opinion and the record as a

whole. See Burch, 400 F.3d at 679 ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").

## V.

## CONCLUSION AND ORDER

Based on the foregoing, the Court finds that the ALJ did not commit harmful error in: (1) ruling that Plaintiff's condition does not satisfy the requirements of listing 12.10; and (2) in his RFC determination, including the weighing of the medical opinions. The Court finds the ALJ's decision to be free from remandable legal error and supported by substantial evidence in the record. Accordingly, IT IS HEREBY ORDERED that Plaintiff's appeal from the decision of the Commissioner of Social Security is DENIED. It is FURTHER ORDERED that judgment be entered in favor of Defendant Commissioner of Social Security and against Plaintiff Ted Charles Jackson. The Clerk of the Court is directed to CLOSE this action.

IT IS SO ORDERED.

Dated:   **August 3, 2022**

UNITED STATES MAGISTRATE JUDGE